*Riley, for appellant.*

*Dembitz & Wehle, for appellee.*

---

R. M. WATSON, ETC., *v.* L. D. HUSBANDS.

**Estoppel—Pleadings.**

> An answer was held not to create an estoppel against defendants or their vendees.

**Public Lands—Military Survey.**

> A military survey was held to be void, and one entering on the land had the right to disregard it.

APPEAL FROM McCRACKEN CIRCUIT COURT.

March 7, 1873.

OPINION BY JUDGE PRYOR:

It is clearly shown that the survey and patent made to John Allen as assignee of Meeter in December, 1825, is entirely at variance with the entry made by the latter in August, 1784. The survey and patent embraces no portion of the boundary included by the entry made. The act approved December 26, 1820 (2 M. & B. Digest 1043),

declares "that a patent issuing on a survey made contrary to the location shall be void to all intents and purposes." See Ky. Statutes, Sec. 4704.

The patent issued to Allen was a mere nullity and there was nothing to prevent the actual entry of the lands by Husbands or those under whom he claimed. Neither Allen nor his heirs made any other exhibit of title and seem never to have been in the actual occupancy of the land. Watson's heirs claim to have derived title through Meeter, also under a purchase and assignment from the latter to their ancestor of his entry made in August, 1784; that this sale and assignment was made prior to the sale made to John Allen; still there is no evidence of this fact except some parol proof tending to show an assertion of claim to the entire boundary of the 1,500-acre entry of Jacob Watson as early as the year 1830 and perhaps prior thereto. The land was never reduced to possession, and the preponderance of the testimony conduces to show that no claim of ownership of any of that land was ever asserted by Watson. J. B. Husbands's deposition shows the manner in which R. M. Watson, a son of Jacob Watson, got possession within this 1,500-acre boundary. After his father's death and the entry of this land by Husbands, R. M. Watson made a purchase of a quarter section of this land for the purpose of getting him a suitable building site and for the reason that he owned land adjoining. This quarter section was within the disputed boundary and its possession is the only possession in fact shown to have been in any of the Watsons or any part of it. Having derived it from Husbands, it is at least strong proof if not conclusive that Jacob Watson and his children never asserted or attempted to show a well-known and valid claim to this whole tract connected with the possession for near half a century. If so they would not have yielded so readily to Husbands's claim. A number of witnesses who were familiar with this land and knew Jacob Watson well corroborate the statements made by Husbands as to the alleged claim of ownership by Watson. R. M. Watson, after his father's death, was then the controlling man of the family, and seems not only to have purchased of Husbands but to have known all about the latter's entry of this land and asserted at the time no claim whatever. The suit by Watson's heirs against Allen's heirs for this same land instituted in July, 1850, resulted in a dismissal of the action without prejudice, and although the an-

swer of the two Woolforks disclaims any interest in the land, still it did not vest the appellants in this case with any title, as they failed to obtain judgment in that action either against Allen's heirs or the Woolforks.

The termination of that suit left them with no better title than they had at its institution. The answer of the Woolforks creates no estoppel as to Husbands, their vendee, or as to themselves. The appellants have not been misled by it in any way, nor does it amount to a donation of their interest to the appellants. The title relied on by Husbands is deducible from the state. No adjudication of the question of title or any other issue was had in the suit instituted in July, 1850, and the parties left in statu quo at the dismissal. The entry made by Husbands was not fraudulent, as the land was not covered by any military survey. This survey was itself void and Husbands as well as all others had the right to disregard it, and if not there is an absence of proof showing that the entry and patent of Husbands was subsequently made. The 16th section of the Act of 1825 does not declare that such an entry as was made in this case is to be deemed void, but simply provides that the receiver shall not sell any section of land or part of a section which may be included in any military patent or survey. Now if the military survey is itself void it may be well doubted whether in such a case there is any inhibition from selling; still if the receiver should sell as in this case, and the military survey is void and the prior entry and patent from the state are both regular, we see no reason why the prior patent should not hold as against a patent admitted to be void. If Husbands occupied the position of a mere adverse claimant, by reason of his possession, the appellants exhibit no such title as authorizes them to recover.

The judgment of the court below is *affirmed*.

*C. D. Smith, C. S. Marshall, for appellant.*

*L. D. Husbands, for appellee.*